UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC DARNELL JOY,<br><br>            Plaintiff,<br><br>     v.<br><br>C. KING, et al.,<br><br>            Defendants. | No. 2:19-cv-0790 JAM DB P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges defendants were deliberately indifferent to his safety in violation of the Eighth Amendment. Before the court is defendant's motion for summary judgment. For the reasons set forth below, this court will recommend defendant's motion be granted and this action be dismissed for plaintiff's failure to exhaust his administrative remedies prior to filing suit.

**BACKGROUND**

Plaintiff filed his civil rights complaint in this court on May 2, 2019.[1] (ECF No. 1.) Plaintiff alleges that in February 2019 at Mule Creek State Prison ("MCSP"), defendants King

---

[1] Under the "mailbox rule," the court considers the date a prisoner turns over his filing to prison authorities for mailing as the filing date. See Houston v. Lack, 487 U.S. 266, 270 (1988). Plaintiff signed his complaint on May 2 and it was filed here on May 3.

1

and Links loudly and publicly identified plaintiff as a snitch. Two days later, three inmates approached plaintiff, told him they heard he was a snitch, and attacked him. After the attack, defendant Knight also stated publicly that plaintiff was a snitch and, the following day, plaintiff was attacked again by the same three inmates. Plaintiff alleges he suffered physical injuries and emotional distress as a result of defendants' conduct.

On screening, the court found plaintiff stated potentially cognizable claims against all three defendants for failure to protect him in violation of the Eighth Amendment. (ECF No. 6.) On August 19, defendants filed both an answer to the complaint and a motion for summary judgment. (ECF Nos. 12, 14.) Defendants argue that plaintiff failed to exhaust his administrative remedies prior to filing his complaint in this court. On September 9, plaintiff filed an opposition (ECF No. 17) and on September 16, respondent filed a reply (ECF No. 18).

## MOTION FOR SUMMARY JUDGMENT

### I. Summary Judgment Standards under Rule 56

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion,

2

against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party typically may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. However, a complaint that is submitted in substantial compliance with the form prescribed in 28 U.S.C. § 1746 is a "verified complaint" and may serve as an opposing affidavit under Rule 56 as long as its allegations arise from personal knowledge and contain specific facts admissible into evidence. See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995) (accepting the verified complaint as an opposing affidavit because the plaintiff "demonstrated his personal knowledge by citing two specific instances where correctional staff members . . . made statements from which a jury could reasonably infer a retaliatory motive"); McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987); see also El Bey v. Roop, 530 F.3d 407, 414 (6th Cir. 2008) (Court reversed the district court's grant of summary judgment because it "fail[ed] to account for the fact that El Bey signed his complaint under penalty of perjury pursuant to 28 U.S.C. § 1746. His verified complaint therefore carries the same weight as would an affidavit for the purposes of summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury
////

could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

To show the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

**II.    Exhaustion**

Defendants argue that plaintiff failed to fully exhaust his claims prior to filing this action in early May of this year. Plaintiff argues that his administrative remedies are "effectively unavailable" to him because he has been threatened by prison officials, including one of the defendants, and because the administrative appeals process is taking so long.

**A. Legal Standards for Exhaustion of Administrative Remedies**

**1.    PLRA Exhaustion Requirement**

The Prison Litigation Reform Act of 1995 (PLRA) mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a

prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Compliance with deadlines and other critical prison grievance rules is required to exhaust. Woodford v. Ngo, 548 U.S. 81, 90 (2006) (exhaustion of administrative remedies requires "using all steps that the agency holds out, and doing so properly"). "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,'— rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford, 548 U.S. at 88); see also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'") (quoting Jones, 549 U.S. at 218).

Although "the PLRA's exhaustion requirement applies to all inmate suits about prison life," Porter v. Nussle, 534 U.S. 516, 532 (2002), the requirement for exhaustion under the PLRA is not absolute, Albino v. Baca, 747 F.3d 1162, 1172-72 (9th Cir. 2014) (en banc). As explicitly stated in the statute, "[t]he PLRA requires that an inmate exhaust only those administrative remedies 'as are available.'" Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010) (quoting 42 U.S.C. § 1997e(a)) (administrative remedies plainly unavailable if grievance was screened out for improper reasons); see also Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir. 2010) ("Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available."). "We have recognized that the PLRA therefore does not require exhaustion when circumstances render administrative remedies 'effectively unavailable.'" Sapp, 623 F.3d at 822 (citing Nunez, 591 F.3d at 1226); accord Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) ("The obligation to exhaust 'available' remedies persists as long as some remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance.").

Dismissal of a prisoner civil rights action for failure to exhaust administrative remedies must generally be brought and decided pursuant to a motion for summary judgment under Rule 56, Federal Rules of Civil Procedure. Albino, 747 F.3d at 1168. "Nonexhaustion" is "an affirmative defense" and defendants have the burden of "prov[ing] that there was an available

5

administrative remedy, and that the prisoner did not exhaust that available remedy." Id. at 1171-72. A remedy is "available" where it is "capable of use; at hand." Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting Albino, 747 F.3d at 1171). Grievance procedures that do not allow for all types of relief sought are still "available" as long as the procedures may afford "some relief." Booth v. Churner, 532 U.S. 731, 738 (2001).

If a defendant meets the initial burden, a plaintiff then must "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Albino, 747 F.3d at 1172. Remedies are "effectively unavailable" where they are "ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." Id. (quoting Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996)). "[T]he ultimate burden of proof," however, never leaves the defendant. Id.

### 2. California's Inmate Appeal Process

In California, prisoners may appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). Inmates in California proceed through three levels of appeal to exhaust the appeal process: (1) formal written appeal on a CDC 602 inmate appeal form; (2) second level appeal to the institution head or designee; and (3) third level appeal to the Director of the California Department of Corrections and Rehabilitation ("CDCR"). Cal. Code Regs. tit. 15, § 3084.7. Under specific circumstances, the first level review may be bypassed. Id. The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a prisoner's administrative remedies. See id. § 3084.7(d)(3). However, a cancellation or rejection decision does not exhaust administrative remedies. Id. § 3084.1(b).

A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him. Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002). In submitting a grievance, an inmate is required to "list all staff members involved and shall describe their involvement in

the issue." Cal. Code Regs. tit. 15, § 3084.2(3). Further, the inmate must "state all facts known and available to him/her regarding the issue being appealed at the time," and he or she must "describe the specific issue under appeal and the relief requested." Id. §§ 3084.2(a)(4). The appeal should not involve multiple issues that do not derive from a single event. Id. § 3084.6(b)(8).

An inmate has thirty calendar days to submit his or her appeal from the occurrence of the event or decision being appealed, or "upon first having knowledge of the action or decision being appealed." Cal. Code Regs. tit. 15, § 3084.8(b).

### B. Undisputed Background Facts re Exhaustion

- On February 26, 2019, plaintiff filed a 602 appeal, no. MCSP-A-19-00838, in which he complained that defendants King and Link gave other inmates copies of "kites" (letters in which plaintiff identified misconduct of others) and made comments suggesting plaintiff was a snitch. As a result, plaintiff complained that he was assaulted by other inmates. (Defendants' Statement of Undisputed Facts ("DSUF") Nos. 1, 2.)

- Appeal no. MCSP-A-19-00838 also alleges that defendant Knight made comments suggesting plaintiff was a snitch, which also resulted in plaintiff being physically assaulted by other inmates. (DSUF No. 3.)

- The first level of review for appeal no. MCSP-A-19-00838 was bypassed. (DSUF No. 6.)

- On March 25, a second level response to appeal no. MCSP-A-19-00838 was issued. The response partly granted plaintiff's appeal, noting that an inquiry had been conducted. The inquiry concluded that staff did not violate CDCR policy. (DSUF Nos. 8, 9.)

- On April 9, Plaintiff filed an appeal of the second level response to the third level of review. He argued that his safety was still in jeopardy and he sought further investigation of the issues in his appeal no. MCSP-A-19-00838. (DSUF Nos. 10-12.)

7

- The third level received plaintiff's appeal on April 12.  (DSUF No. 13.)
- Pursuant to the California Code of Regulations tit. 15, § 3084.8, a third level response is due within sixty working days from the date it is received by the third level Appeals Chief.  (DSUF No. 14.)
- On May 2, plaintiff filed the present action.  (ECF No. 1.)
- On July 9, third level reviewers sent plaintiff's appeal back to the appeals coordinator at MCSP, the second level reviewer, for a new appeal inquiry.  Also on July 9, third level reviewers informed plaintiff of this action.  (DSUF Nos. 16-18.)
- On August 6, a second level response was issued for appeal no. MCSP-A-19-00838.  (ECF No. 17 at 42-43.)
- On August 15, plaintiff submitted an appeal of the second level response to the third level of review.  (ECF No. 17 at 44-47.)
- As of the date he filed his opposition brief on September 9, plaintiff had not received a third level response.  (ECF No. 17 at 6.)
- Plaintiff has submitted no other appeals of the actions which are the subject of his complaint through the third level of review.[2]  (DSUF No. 20.)

**C. Analysis of Exhaustion**

Before he filed a § 1983 action here, plaintiff must have fully exhausted his appeals by submitting them to the third level of review and receiving a denial at that level.  Plaintiff may not exhaust during the course of this litigation.  See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002).  Where a prisoner has not satisfied the exhaustion requirement prior to filing suit, "dismissal is required."  Id.

Plaintiff concedes that when he filed the present case on May 2, 2019, he had not received a response from the third level reviewers.  However, plaintiff argues that he has been subjected to

---

[2] Plaintiff states that he has, in fact, filed other appeals regarding the February 2019 conduct of defendants.  However, the copies of appeals he references involve grievances and an RVR filed in August 2019, which cannot be considered to have exhausted plaintiff's appeals prior to May 2, 2019 when he filed this federal action.  (See Ex. B to Oppo. (ECF No. 17 at 16-24).)

8

threats and obstruction of his appeals process that has made the appeals process effectively unavailable to him.

A prisoner may be excepted from the exhaustion requirement where "'the administrative procedures were unavailable, . . . prison officials obstructed his attempt to exhaust or . . . he was prevented from exhausted because procedures for processing grievances weren't followed.'" Nunez, 591 F.3d at 1224 (quoting Ngo v. Woodford, 539 F.3d 1108, 1110 (9th Cir. 2008)). Plaintiff filed his initial appeal and each subsequent challenge to a decision in a timely manner. Plaintiff fails to show that any conduct of defendants, or of other prison officials, caused him to be unable to take advantage of the appeals review system.

Plaintiff states that the officer who interviewed him about his appeal in March impliedly threatened him if he pursued his appeal. (See ECF No. 17 at 3.) However, plaintiff goes on to state that he did not heed that implied threat and submitted his 602 to the third level of review. (Id. at 4.)

Plaintiff also states that after he filed the April 9 appeal to the third level, defendant Links told him that his 602 wasn't' "going anywhere" and that plaintiff should "watch his back." (ECF No. 17 at 4.) He further states that when he complained to his counselor, she ignored his concerns. (Id.) Plaintiff states that he felt compelled to file the present suit in May because he feared staff was obstructing his administrative remedies. (Id. at 5.) However, no response was due from the third level until 60 working days after he submitted his appeal to them. Rather than wait for a response, plaintiff simply filed his suit here.

On a related note, while plaintiff complains that the third level response issued on July 9 was untimely, it was not. Pursuant to the California Code of Regulations tit. 15, § 3084.8, a third level response is due within sixty "working days" from the date it is received by the third level Appeals Chief. Here, there is no dispute that the third level appeals office received plaintiff's appeal on April 12. "Working days" are typically considered to be all days except Saturdays, Sundays, and holidays.[3] Defendants assert, and this court agrees, that those 60 working days

---
[3] The fact that the regulation includes some deadlines by "calendar days" and others by "working days" supports the court's statement that the common definition of working days is applicable

9

expired on July 9, the date the third level reviewers issued both their decision to return the appeal to the second level and a notice to plaintiff of doing so. (See Ex. B to Spaich Decl. (ECF No. 14-5 at 7, 18).)

Plaintiff's contention that he received an RVR in retaliation for filing appeals involves conduct that occurred <u>after</u> he filed this federal case. (See ECF No. 17 at 6.)

One of the primary purposes of the PLRA's exhaustion requirement is that exhaustion "'gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures.'" Nunez, 591 F.3d at 1223 (quoting Woodford, 548 U.S. at 89). In plaintiff's case, the system appears to be working as it should. At the initial third level of review, reviewers were concerned that plaintiff's allegations had not been investigated sufficiently. His appeal was returned to the second level for purposes of conducting a further investigation. And, plaintiff demonstrates that he has again been unfazed by any attempts to dissuade him to pursue his appeals because he states that he filed his most recent third level appeal on August 15, 2019. (ECF No. 17 at 6.)

In sum, the undisputed facts show that plaintiff did not exhaust his administrative remedies through all levels of review prior to filing this suit. Further, plaintiff provides no basis for this court to conclude that he should be excused from the exhaustion requirement of 42 U.S.C. § 1997e(a).

**CONCLUSION**

For the foregoing reasons, IT IS HEREBY RECOMMENDED that defendant's motion for summary judgment (ECF No. 14) be granted and this case be dismissed without prejudice to plaintiff's right to bring a new action when he has exhausted his administrative remedies.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days

---

here. See Cal. Code Regs. tit. 15, § 3084.8(b) (inmate must submit an appeal "within 30 calendar days" of the occurrence) and § 3084.8(c)(3) (third level response "shall be completed within 60 working days from the date of receipt by the third level Appeals Chief").

after being served with these findings and recommendations, either party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 8, 2019

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9/DLB1/prisoner-civil rights/joy0790.msj exh fr